## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| JUAN SALAZAR; et al., | |
| Plaintiff, | |
| v. | Civil.Action. No. 2:22-cv-146 (WKS) |
| CENTURY ARMS, INC., and ROMARM, S.A., | |
| Defendants. | |

## MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW

Defendant Century Arms, Inc., ("Century"), by its undersigned counsel, moves to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12. The reasons therefore are set forth in the incorporated Memorandum of Law.

## MEMORANDUM OF LAW

Century respectfully submits this Memorandum of Law in support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

This lawsuit arise out of the criminal misuse of a rifle.

On July 28, 2019, after legally purchasing a semi-automatic rifle ("Rifle") weeks earlier in Nevada, an individual unlawfully transported the Rifle into California, criminally bypassed security at the Gilroy Garlic Festival, and intentionally killed three people and injured others. Despite the shooter criminally transporting the Rifle from Nevada into California, illegally entering the festival, and then intentionally misusing the Rifle to kill and injure festival-goers, Plaintiffs have asserted broad and wide-ranging allegations against Century, the importer of the Rifle. In essence, Plaintiffs contend that Century should be held responsible for the shooter's

criminal actions solely because Century lawfully imported and distributed the Rifle.

As explained below, however, Plaintiffs' claims against Century should be dismissed because (1) the lawsuit is untimely; (2) the claims are barred by Nevada Revised Statute § Section 41.131; (3) the claims are prohibited by the Protection of Lawful Commerce in Arms Act ("PLCAA" of the "Act"); (4) imposing California's laws and policies on lawful commerce in other states violates the Tenth and Fourteenth Amendments; (5) Plaintiffs otherwise fail to state cognizable causes of action under the common law; and (6) the intentional criminal acts of the shooter is the proximate cause.

## FACTUAL BACKGROUND

### I.   PROCEDURAL HISTORY.

Plaintiffs initially commenced a lawsuit in California against the organizers of the Gilroy Garlic Festival as well as the security company retained for the event, bringing claims for negligence.  The original complaint was amended on four occasions, and five days before the expiration of the statute of limitations, Plaintiffs filed a Third Amended Complaint, asserting three causes of action against Century, the importer of the firearm in question.  (See **Exhibit A**) After Century filed motions to dismiss (demurrer and a motion to strike), the case against Century was dismissed for lack of personal jurisdiction on November 22, 2023.  (See **Exhibit B**)

While the California action was pending, on July 28, 2022, Plaintiffs commenced this lawsuit in the District of Vermont.  (Dkt. No. 1.)  After filing multiple motions, the deadline to serve the Complaint was extended by Court Order until December 22, 2023.  (Dkt. No. 2, 3, 4, 5, 6, 7, 8, 9.)  Thereafter, counsel for Century executed a Waiver of the Service of Summons in accordance with Rule 4.  (Dkt. No. 10.)  The parties then stipulated to a briefing schedule on the

intended motion to dismiss, which the Court entered.  (Dkt. No. 12.)[1]

## II.   FACTUAL ALLEGATIONS

Century is a Vermont corporation with a principal place of business in Florida.  (Dkt. No. 1, ¶¶ 26-28.)  Century imports and manufactures firearms, which it then sells to licensed distributors for sale by federally licensed firearms dealers throughout the country.  (Id.)  And this is precisely what occurred here.  The Rifle at issue (a WASR-10) is a semi-automatic rifle that can lawfully be sold in most states, but it is prohibited in California.  (Id.)

On July 9, 2019, the shooter lawfully purchased the Rifle from a federally licensed firearms dealer in Nevada.  (Dkt. No. 1, Plt. Compl., ¶ 7.)  On July 28, 2019, after unlawfully transporting the Rifle into California and illegally bypassing security to enter the Gilroy Garlic Festival, they intentionally fired into a crowd of people, killing three and injuring others.  (Id. ¶¶ 1-2.)

## III.   CAUSES OF ACTION.

Plaintiffs assert three causes of action against Century:  (1) a no-defect product liability claim, *i.e.*, that the risk of "unlawful misuse" outweighs any benefit of the design; (2) a general negligence claim arguing that Century had a duty to control the conduct of the shooter; and (3) a generalized claim for public nuisance.  (Id. ¶¶ 119-153.)  In addition to monetary damages, Plaintiffs seek injunctive relief requiring "cessation" of Defendants' business practice related to the importation, manufacturing, and sale of firearms.  (Id. ¶ 153.)

## STANDARDS

## I.   RULE 12(B)(6) STANDARD.

Rule 12(b)(6) requires dismissal of a complaint if the plaintiff fails "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 8(a)(2), a plaintiff is

---

[1] The parties subsequently agreed to push the schedule by one week.

obligated to provide the "grounds" of "entitle[ment] to relief," which requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 553 (2007).  The facts alleged in a complaint must be enough to raise a right to relief above the speculative level or must otherwise be sufficient "to state a claim for relief that is plausible on its face." <u>Id.</u> At 555.  On a motion to dismiss, the Court must accept as true all well-pleaded factual allegations. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).  However, the Court should not accept inferences drawn by the plaintiff that are unsupported by the facts alleged in the complaint and should not accept the plaintiff's legal conclusions.  <u>See, e.g.,</u> <u>Preterotti v. Lora</u>, 2016 WL 6810883, at *2 (D. Vt. Oct. 6, 2016).

## II.   CHOICE OF LAW STANDARD.

Since this case implicates the laws of different states (Nevada – where the Rifle was distributed and purchased by the shooter; California – where the shooter unilaterally transported the Rifle and criminally used it; and Vermont – where Century is incorporated), a choice of law issue is presented.  A, a choice of law analysis is performed on an issue-by-issue basis. <u>Miller v. White</u>, 702 A.2d 392, 395 (Vt. 1997).  "Thus, it is possible that within one case, the law of one jurisdiction will apply to one issue and the law of another jurisdiction to another issue." <u>Ibid.</u>

Vermont "has adopted the Restatement (Second) of Conflicts [of Laws] for choice-of-law questions in both tort and contract cases." <u>McKinnon v. F.H. Morgan & Co.</u>, 750 A.2d 1026, 1028 (Vt. 2000).  To decide what law governs a particular issue under the Restatement, a court determines which state "has the most significant relationship to the occurrence and the parties." <u>Bryant v. Braithwaite</u>, 2013 WL 877107, at *12 (D. Vt. March 8, 2013).  The first step in this analysis is to determine whether the laws of the jurisdictions are in conflict. <u>Long v. Parry</u>, 921 F. Supp. 2d 269, 274 (D. Vt. 2013).  Where there is no conflict, a court should avoid the choice of law question and apply the law of the forum state. <u>Havill v. Woodstock Soapstone Co.</u>, 178

4

A.2d 423, 427 (Vt. 2001).  If the laws of two jurisdictions are in conflict, the second step "is to ascertain whether a specific section of the Restatement governs what law should ordinarily apply to the particular action or legal issue."  Martineau v. Guetin, 751 A.2d 776, 778 (Vt. 2000).  "If such a section exists, generally the law of a particular state is presumed to be the correct forum unless another state has a more significant interest in the litigation."  Id.

The specific section should also be analyzed based upon the general principles outlined in section 6 of the Second Restatement:  (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.  Id. at 778-79.  The contacts to be taken into account in applying these principles in tort cases are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Id. at 779 (citing 2d Restatement of Conflicts, § 145(2)).

**ARGUMENT**

**I.     PLAINTIFFS' LAWSUIT AGAINST CENTURY IS UNTIMELY.**

In this case, the applicable statute of limitations for a wrongful death claim is two years, regardless of which state's law is applied.  See 14 V.S.A. § 1492(a); Nev. Rev. Stat. § 11.190(4)(e); Cal. Code Civ. P. § 335.1.  In the Complaint, Plaintiffs are identified as "people who were injured or who lost loved ones in the [shooting at the Gilroy Garlic Festival]," which occurred on July 28, 2019.  (Dkt. No. 1, ¶¶ 1-2, 9.)  Thus, any claim for wrongful death needed to be filed by July 28, 2021, regardless of which state's law applies.  However, this lawsuit was

not commenced until July 28, 2022, which means all claims for wrongful death are time-barred.

In terms of the personal injury claims, the applicable statute of limitations is either two years (California or Nevada) or three years (Vermont). See 12 V.S.A. § 512(4); Nev. Rev. Stat. § 11.190(4)(e); Cal. Code Civ. P. § 335.1. Therefore, a choice of law issue is presented. Bryant, 2013 WL 877107 at *12. The next step in the analysis "is to ascertain whether a specific section of the Restatement governs what law should ordinarily apply to the particular action or legal issue." Martineau v. Guertin, 751 A.2d 776, 778 (Vt. 2000). "If such a section exists, generally the law of a particular state is presumed to be the correct forum unless another state has a more significant interest in the litigation." Id.

> For statutes of limitations, Restatement section 142 states:
>
> whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable: (1) the forum will apply its own statute of limitations barring the claim; (2) the forum will apply its own statute of limitations permitting the claim unless: (a) maintenance of the claim would serve no substantial interest of the forum and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflicts § 142 (1988); see also Long v. Parry, 921 F. Supp. 2d 269, 276 (D. Vt. 2013).

Here, Vermont's statute of limitations should not be applied because maintaining the claim would serve no substantial interest of the forum and the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. Further, this case presents a situation where applying Vermont's longer statute of limitations would be unreasonable.

First, the general purpose of statutes of limitations is to protect both in-state defendants and the courts from stale claims. See, e.g., Ware v. Gifford Memorial Hosp., 664 F. Supp. 169,

171 (D. Vt. 1987); see also Kauffman v. State Farm Mut. Auto Ins. Co., 857 F. Supp. 23, 25 n. 2 (D. Vt. 1994).  Thus, there is no interest in permitting a longer statute of limitations in this instance.  Indeed, in a case involving an in-state defendant where there is a choice between applying a shorter statute of limitations from another state or a longer statute of limitations from the forum state, applying the forum's "longer limitations period would undermine its interest in protecting resident defendants."  Washburn v. Soper, 319 F.3d 338, 342-43 (8th Cir. 2003); see also Rustico v. Intuitive Surgical, Inc., 993 F.3d 1085, 1093 (9th Cir. 2021) ("Statutes of limitations are designed to protect in-state defendants and courts by cutting off liability and preventing the litigation of stale claims.").  Here, Vermont has no substantial interest in applying its longer statute of limitations in this case.

Second, it is clear that either California (where the incident occurred) or Nevada (where the sale to the shooter occurred) have far greater interests in this case, especially with respect to applying the statute of limitations.  The injury occurred in California, the sale occurred in Nevada, and the place where the relationship between the parties is centered is Nevada, which is where the Rifle was distributed to and purchased by the shooter.  Moreover, the general principles of section 6 of the Second Restatement also reinforce the conclusion that the other implicated states (Nevada and California) have a far greater relationship to this matter.  Specifically, with respect to Nevada, the parties involved would expect that the law of the location where the firearm was sold would apply to any lawsuit related to such a sale.  Therefore, the two-year statute of limitations should apply, and Plaintiffs' lawsuit should be dismissed.

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY NEVADA REVISED STATUTE 41.131.

Further, there is a clear conflict of law because Section 41.131 of the Nevada Revised Statutes prohibits the filing of this lawsuit whereas neither Vermont nor California have a similar statute.  See Nev. Rev. Stat. § 41.131 ("No person has a cause of action against the manufacturer

or distributor of any firearm or ammunition merely because the firearm or ammunition was capable of causing serious injury, damage or death, was discharged and proximately caused serious injury, damage or death.).  Therefore, the next step in the analysis is to assess which state has the greater connection and interest to this issue.

Under the Restatement, the "law of the state where the injury occurred" applies in a personal injury action **"unless, with respect to the particular issue, some other state has a more significant relationship."**  Rodrigue v. Illuzzi, 278 A.3d 980, 985 (Vt. 2022) (quoting Restatement (Second) of Conflict of Laws § 146 (1971)) (emphasis added).  Here, the injuries occurred in California when the shooter criminally and unilaterally brought the Rifle into that state and committed assault and murder during the festival. However, when one analyzes the relevant contacts under section 145 in light of the principals established by section 6, it is clear that Nevada law should apply to this action.

While the injury occurred in California, the conduct causing the injury related to the unilateral acts of the Shooter who purchased the Rifle in Nevada and then (1) illegally transported it into California and (2) unlawfully utilized it at the festival.  Plaintiffs allege that this rifle was not lawful for sale, purchase, or ownership in California, but there is no allegation that Century or its distributor sold the Rifle in California.  Rather, it is undisputed that the Rifle was lawfully distributed to Nevada and lawfully sold by a federally licensed dealer in Nevada. The unilateral activity of the shooter in intentionally bringing the Rifle into California and criminally using it there is the only connection to California.  Therefore, the place where the alleged conduct at issue occurred would be Nevada, which is where the sale occurred. Moreover, the location where the relationship between the parties is centered is undeniably

Nevada, which is where the shooter purchased the Rifle.[2]

 Considering these contacts in light of the principles set forth in section 6 reinforces the conclusion that Nevada law applies.  The needs of the interstate system are protected by applying Nevada law because that is where the federally licensed retailer sold the Rifle and, per Nevada's policies and laws, such a rifle is permitted to be sold in that state.  Applying Nevada law also protects the justified expectations of the parties, as Century would not expect that it would be subject to California law for a product which it does not – and cannot – sell to California. Moreover, Nevada clearly has an interest in having its laws applied to the sale of firearms within its borders and the policies and the decisions that the State has made in that regard.   In this respect, when a firearm is lawfully sold in Nevada, Nevada would not want a manufacturer to be sued in another state because someone unilaterally transported it into a state where the firearm was not permitted.  Finally, there are no hurdles with respect to applying the law of Nevada to this case because the law is clear and without complication.  Considering all of the factors involved, Nevada law should apply to Plaintiffs' claims in this case.

 Applying Nevada law, Section 41.131 of the Statutes states:

1. No person has a cause of action against the manufacturer or distributor of any firearm or ammunition merely because the firearm or ammunition was capable of causing serious injury, damage or death, was discharged and proximately caused serious injury, damage or death. This subsection is declaratory and not in derogation of the common law.

2. This section does not affect a cause of action based upon a defect in design or production. The capability of a firearm or ammunition to cause serious injury, damage or death when discharged does not make the product defective in design.

---

[2] The domicile, residence, and place of incorporation of the parties implicate California (Plaintiffs) and Vermont and Florida (Defendant).  Therefore, this contact does not particularly favor the application of any law.

Nev. Rev. Stat. § 41.131.[3]  The purpose of enacting this statute was to establish that "if someone shoots a firearm and hurts somebody, you can't sue the firearms manufacturer because it shoots." Parsons v. Colts Mfg. Co., LLC, 499 P.3d 602, 607 (Nev. 2021) (quoting Hearing on S.B. 211 Before the Assemb. Judiciary Comm. 63d Leg. (Nev., Apr. 17, 1985)).  Under this statute, "[n]o person has a cause of action against the manufacturer or distributor of *any firearm* or ammunition." Id. (quoting NRS 41.131(1)).  Indeed, this statute reiterates the proposition that "there is no common-law basis for imposing a duty on firearm manufacturers and distributors for third-party criminal misuse of firearms." Id. at 610.

In Parsons, on a certified question from the Nevada District Court, the Nevada Supreme Court unequivocally found that "NRS 41.131 provides the gun companies immunity from the wrongful death and negligence per se claims asserted against them under Nevada law in this case." Id. at 610.  There, the Nevada Supreme Court ruled that the statute was broad and that the Nevada Legislature intended to preclude any lawsuit against firearm manufacturers or sellers when a third party discharged the firearms and proximately caused injuries.  Id.

In this case, Plaintiffs' claims against Century are precluded by NRS 41.131. Specifically, Plaintiffs allege that the shooter purchased the Rifle in Nevada, illegally transported it into California, and then criminally discharged the Rifle at the festival, causing injuries. Accordingly, Plaintiffs' claims are prohibited by NRS 41.131 and Century is immune from the claims asserted.  Therefore, Plaintiffs' Complaint against Century should be dismissed with prejudice.

## III.   **PLAINTIFFS' CLAIMS ARE BARRED BY THE PLCAA.**

### 1.   **Introduction.**

---

[3] A "person" is defined to mean "a natural person, any form of business or social organization and any other nongovernmental legal entity."  NRS 0.039.

The PLCAA is a <u>federal</u> preemption statute that prohibits lawsuits brought by any person against the manufacturer or seller of a firearm for damages caused by the criminal misuse of the product unless the action fits within one of the limited exceptions to the Act.  In this way, the PLCAA preempts all common law theories of liability other than the claims identified as exceptions in the Act.  If a plaintiff's causes of action do not meet any of the enumerated exceptions to the Act, the entire lawsuit must be immediately dismissed.

The PLCAA was enacted with the express purpose of prohibiting civil lawsuits against manufacturers of firearms for damages "resulting from the misuse of their products by others." *See* Preamble to 15 U.S.C. § 7901. Indeed, the PLCAA's express purpose is to "prohibit causes of action against manufacturers, distributors, dealers and importers of firearms" for harm "caused by the criminal or unlawful use of firearms" that "functioned as designed and intended." 15 U.S.C. § 7901(b)(1); <u>see</u> <u>City of New York v. Beretta U.S.A. Corp.</u>, 524 F.3d 384, 402 (2d Cir 2008) ("We think Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the 'lawful design, manufacture, marketing, distribution, importation or sale of firearms.'").  Congress viewed actions by individual plaintiffs seeking to hold manufacturers liable for the criminal misuse of firearms that "functioned as designed and intended" as improper attempts to regulate an already "heavily regulated" industry "through judgments and judicial decrees." 15 U.S.C. §§ 7901(a)(3)-(4), (8).

Under the PLCAA, a cause of action that meets the definition of a "qualified civil liability action" shall not be brought in any federal or state court.  <u>Id.</u> § 7902(a).  Thus, any implicated claims must be immediately dismissed, which means that the applicability of the PLCAA is a threshold issue.  <u>Id.</u> § 7902(b).   A "qualified civil liability action" is defined as:

> A civil action or proceeding or an administrative proceeding brought by another person against a manufacturer or seller of a qualified product or a trade

association, for damages, injunctive or declaratory relief, abatement, restitution,
fines, or penalties, or other relief resulting from the criminal or unlawful misuse
of a qualified product by the person or a third party.

Id. § 7903(5)(A).  Firearms are included within the definition of "qualified product," and

"unlawful misuse" is defined as "conduct that violates a statute, ordinance, or regulation as it

relates to the use of a qualified product."  Id. § 7903(4), (9).  Thus, Congress created broad

immunity for firearm manufacturers and sellers.  Id. § 7903(5)(a).

In enacting the PLCAA, however, Congress provided six narrow exceptions which

permit the following state law causes of action to proceed, which include:

- an action in which a manufacturer or seller of a qualified product knowingly
  violated a State or Federal statute applicable to the sale or marketing of the
  product, and the violation was a proximate cause of the harm for which relief
  is sought

- an action for death or physical injuries or property damage resulting directly
  from a defect in design or manufacture of the product, when used as intended
  or in a reasonably foreseeable manner, except that where the discharge of the
  product was caused by a volitional act that constituted a criminal offense, then
  such act shall be considered the sole proximate cause of any resulting death,
  personal injuries or property damage

15 U.S.C. § 7903(5)(A)(i)-(vi).

With the PLCAA, Congress created a new federal law that preempts certain statutory and

common law claims.  See Estate of Charlot v. Bushmaster Firearms, Inc., 628 F. Supp. 2d 174,

182 (D.D.C. 2009). The PLCAA created a new federal standard that governs when plaintiffs can

sue manufacturers or sellers of firearms or firearm products:  "The PLCAA bars qualified civil

liability actions, as defined in the statute. The definition of qualified civil liability action

permissibly sets forth a new legal standard to be applied to all actions."  City of New York, 524

F.3d at 395.  Accordingly, the PLCAA "preempts and displaces conflicting state law." Estate of

Charlot, 628 F. Supp. 2d at 182; see Ileto, 565 F.3d at 1139-40; City of New York, 524 F.3d at

395-96.  "Congress clearly intended to preempt common-law claims, such as general tort

theories of liability" and

> [this] conclusion is bolstered by Congress' inclusion of the second exception to
> preemption: **The PLCAA does not preempt claims against a seller of
> firearms for negligent entrustment or negligence per se. That exception
> demonstrates that Congress consciously considered how to treat tort
> claims. While Congress chose generally to preempt all common-law claims,
> it carved out an exception for certain specified common-law claims.**

Ileto, 565 F.3d at 1135 n. 6 (internal citations omitted) (emphasis added).

In this way, the Act serves as a filter for qualified lawsuits.  See Woods v. Steadman's

Hardware, Inc., 2013 WL 709110, at *10-11 (D. Mont. Feb. 26, 2013).  "Subject to [the]

exceptions . . . the PLCAA establishes a new legal standard for actions that fall within the

definition of a qualified civil liability action that preempts common law claims based on general

tort liability."  Sambrano v. Savage Arms. Inc., 338 P.3d 103, 105 (N.M. Ct. App. 2014).  Here,

it is undisputed that the PLCAA applies.[4]  Thus, the threshold issue is whether any of Plaintiffs'

causes of action meet one of the exceptions to the Act.  As explained below, they do not, and

Plaintiffs' lawsuit against Century should be dismissed.

## 2.   **The PLCAA Bars Plaintiffs' First Cause of Action for Products Liability.**

Although Plaintiffs assert a cause of action for products liability (First Cause of Action),

such a claim does not meet the product liability exception to the PLCAA, which states:

> an action for death or physical injuries or property damage resulting directly from
> a defect in design or manufacture of the product, when used as intended or in a
> reasonably foreseeable manner, **except that where the discharge of the product
> was caused by a volitional act that constituted a criminal offense, then such
> act shall be considered the sole proximate cause of any resulting death,
> personal injuries or property damage.**

15 U.S.C. § 7903(5)(A)(v) (emphasis added).  In other words, the product liability exception to

---

[4] Indeed, the allegations in Plaintiffs Complaint make clear that they are seeking damages against Century (an importer
and seller of firearms) resulting from the criminal and unlawful misuse of that firearm by the shooter.  See 15 U.S.C.
§ 7903(5)(A); see also § 7903(6)(A) (noting that "seller" includes importers and dealers of firearms).

the PLCAA is inapplicable when the firearm's discharge is the result of a "volitional act" that constitutes a "criminal offense" because that act will be "the sole proximate cause" of any resulting death or personal injury as a matter of law.  Id.; Travieso v. Glock Inc., 2021 WL 913746, at *9-11 (D. Ariz. Mar. 10, 2021); see also Chavez v. Glock, Inc., 207 Cal. App. 4th 1283, 1317-18 (2012) (explaining that the product liability exception to the PLCAA does not apply if the firearm's discharge was the result of a volitional criminal act); see also Ryan v. Hughes-Ortiz, 959 N.E.2d 1000, 1008-1009 (Mass. Ct. App. 2012) (same).

Based on Plaintiffs' pleadings, it is undisputed that the Rifle functioned as designed; that the shooter intentionally discharged it at the festival; and that the shooter's actions were criminal. (Dkt. No. 1, Compl., ¶¶ 1-2; see also id. ¶ 121 (noting that the firearm in question was "misused [by the shooter] in an unlawful act of gun violence").)  Accordingly, under Section 7903(5)(A)(v), the criminal volitional acts of the shooter constitute the sole proximate cause of the incident and Plaintiffs' damages as a matter of law.  Therefore, Plaintiffs' Sixth Cause of Action for products liability should be dismissed with prejudice.[5]

### 3.   The PLCAA Bars Plaintiffs' Second Cause of Action for Negligence.

In their Second Cause of Action, Plaintiffs allege that Century was negligent because it failed to "install reasonable safeguards" when selling an "especially dangerous" firearm to the public.  (Dkt. No. 1, ¶ 78, 134-136.)[6]  However, Plaintiffs' common law negligence claim is barred by the PLCAA.  In fact, such a general negligence claim is precisely the reason the PLCAA was enacted.

---

[5] It should also be noted that Plaintiffs do not articulate any alleged defect with the firearm in question.  Rather, Plaintiffs generally allege that the firearm, as designed, was defective in that there was a risk that it "[c]ould be misused in an unlawful act of gun violence like the [one at issue]."  (Dkt. No. 1, Compl., ¶¶ 120-127.)  Thus, Plaintiffs appear to be pursuing a "no-defect" theory of product liability, which – as noted below – is not a viable cause of action.

[6] In essence, Plaintiffs' negligence claim boils down to an allegation that if Defendant had chosen not to sell this Rifle, then the shooter could not have lawfully acquired it, and then he could not have criminally and intentionally misused it in the manner he did.  This is not a viable basis for a negligence claim.

Notably, a common law negligence claim is not listed as an exception to the PLCAA.  15 U.S.C. § 7903(5)(A).  As many courts have explained, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability."  Ileto, 565 F.3d at 1135 n. 6.  In enacting the PLCAA, "Congress consciously considered how to treat tort claims" and it "chose generally to preempt all common law claims," except for the "specified common-law claims" listed in the exceptions to the Act.  Id.; Estate of Charlot, 628 F Supp 2d at 182 (explaining that the PLCAA "preempts and displaces conflicting state law").  Thus, the PLCAA prohibits common law negligence claims.  Ileto, 565 F.3d at 1135 n. 6; see also Jeffries v. District of Columbia, 916 F. Supp. 2d 42, 46 (D.D.C. 2013) (holding that the PLCAA unequivocally barred the plaintiff's negligence claim against the firearms manufacturer); Delana v. CED Sales, Inc., 486 S.W.3d 316, 321-22 (Mo. 2016) (noting that the PLCAA prohibits common law negligence actions seeking damages from the criminal misuse of a firearm); Sambrano, 338 P.3d at 105 (holding that the PLCAA "preempts common law claims based on general tort liability"); Estate of Kim, 295 P.3d at 386 ("The statutory exceptions do not include general negligence and reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage.").

Plaintiffs assert a general negligence claim, alleging that Century – as an importer and seller of firearms – had a heightened duty of care because it was selling a "dangerous" product. (Dkt. No. 1, Compl., ¶¶ 130-136.)  Such a general, common-law claim of negligence is expressly barred by the PLCAA.[7]  And should be dismissed with prejudice.

### 4.  The PLCAA Bars Plaintiffs' Third Cause of Action for Public Nuisance.

---

[7] Indeed, as demonstrated below, Plaintiffs' general negligence theory is tantamount to strict liability, whereby every lawful manufacturer or seller of a firearm is liable for any subsequent intentional and criminal misuse of the product by an individual.  Such a theory of liability is not cognizable under the common law.

In their Third Cause of Action, Plaintiffs assert a claim for public nuisance under California Civil Code § 3480.  (Dkt. No. 1, Plt. Compl., ¶¶ 142-153.)  Plaintiffs contend that Century "create[ed] a public nuisance in California" by lawfully selling rifles in other states that eventually entered California."  (Id.)  Century disputes the application of California law to this matter, regardless, this claim cannot be maintained because the PLCAA does not include an exception for a public nuisance claim.  See 15 U.S.C. § 7903(5)(A)(i)-(vi) (listing PLCAA exceptions).   Therefore, Plaintiffs' Third Cause of Action should be dismissed.[8]

## 5.   **The Predicate Exception is Not Applicable.**

At various points in the Complaint, Plaintiffs allege that Defendant Century violated, or aided and abetted in violating, certain laws: 18 U.S.C. § 922(r) (pertaining to assembling or modifying a semiautomatic rifle from imported parts); 18 U.S.C. § 922(b)(4) (prohibiting sales of "machineguns"); and Cal. Pen. Code § 30605(a) (California assault weapons ban).[9] Defendant expects that Plaintiffs cited these statutes in an effort to meet the aforementioned "predicate exception" to the PLCAA, which, as a precondition for bringing a cognizable claim, requires a showing that Century "knowingly violated a statute applicable to the sale or marketing

---

[8] Additionally, the fact that Plaintiffs allege a cause of action for public nuisance under California Civil Code § 3480 is insufficient to meet the "predicate exception" to the Act.  The third exception to the PLCAA permits a cause of action "in which a manufacturer or seller of a [firearm] knowingly violated a State or Federal statute applicable to the sale or marketing of [firearms] and the violation was a proximate cause of the harm for which relief is sought."  15 USC § 7903(5)(A)(iii).  This exception is referred to as the "predicate exception" because it requires a plaintiff to establish a knowing violation of a statute applicable to the sale or marketing of firearms.  Id.  It is well-settled, however, that a cause of action based on violation of a public nuisance statute does not satisfy the predicate exception.  Ileto, 565 F.3d at 1137-38 (affirming dismissal of a public nuisance action under § 3480 in accordance with the PLCAA because an alleged violation of § 3480 did not meet the predicate exception); City of New York, 524 F.3d at 390 (holding that an action based on a violation of New York's nuisance statute did not meet the predicate exception to the PLCAA).

[9] The Complaint also contains the following boilerplate allegation: "One or more of Defendants may also have violated additional laws including, but not limited to, California and Vermont's unfair trade practice laws by engaging in advertising actively encouraging the unlawful or dangerous use of firearms."  (Dkt. No. 1, ¶¶ 5-6.)  This standalone contention is unsupported by any other pleaded material facts.  Such a boilerplate and conclusory assertion of law is afforded no deference and will not be assumed as true for purposes of assessing whether a complaint states a cause of action.  See, e.g., Preterotti v. Lora, 2016 WL 6810883, at *2 (D. Vt. Oct. 6, 2016).

of" firearms and the violation "was a proximate cause of the harm for which relief is sought." 15 USC § 7903(5)(A)(iii). Simply put, there are no pleaded facts which, if true, could establish that the predicate exception is applicable.

###   i.   Century Did Not Violate 18 U.S.C. § 922(r).

Plaintiffs contend that 18 U.S.C. § 922(r) prohibits any person from assembling imported parts into a semiautomatic rifle that is "not particularly suitable for or readily adapted to sporting purposes." (Dkt. No. 1, Plt. Compl. ¶ 39.) However, Plaintiffs' contention is misguided.

The Gun Control Act ("GCA"), which governs the importation of firearms, prohibits (1) importing certain semiautomatic rifles and shotguns as defined by 18 U.S.C. § 925(d)(3) or (2) completely reassembling the identified semiautomatic rifles and shotguns from separately imported parts. 18 U.S.C. § 922(r), 925(d)(3). However, such firearms can be assembled in the United States when they contain a combination of domestically made and imported parts, but an assembler is limited to utilizing no more than ten of the imported parts listed in 27 C.F.R. § 178.39(c). See 27 C.F.R. § 178.39(a).[10] Thus, a foreign-made semiautomatic rifle or shotgun can legally be (1) imported if it meets the standards set forth in Section 925(d)(3) or (2) assembled with domestic and imported parts so long as no more than ten of the imported parts listed in Section 178.39(c) are utilized. See 18 U.S.C. § 922(r), 925(d)(3); 27 C.F.R. § 178.39(c); see also Firearms Import/Export Roundtable Trade Group v. Jones, 854 F. Supp. 2d 1, 14 (D.D.C. 2012) (explaining that 18 U.S.C. § 922(r) and 27 C.F.R. § 478.39 must be read in conjunction and that assembly is allowed when using no more than ten of the imported parts listed in Section 478.39).

---

[10] The Bureau of Alcohol Tobacco and Firearms ("ATF") is delegated the task of creating and enforcing federal regulations. The Code of Federal Regulations ("C.F.R.") is the codification of the general and permanent regulations published in the Federal Register by the executive departments and agencies of the federal government, including the ATF. Title 27 of the C.F.R. contains the rules and regulations governing alcohol, tobacco products, and firearms.

There is no allegation in the Complaint that Century imports or assembles rifles that violate Section 925(d)(3).  In fact, Plaintiffs concede that Defendant complies with the aforementioned laws.  Instead, Plaintiffs allege that the applicable regulation (C.F.R. § 178.39) is "erroneous."  (Dkt. No. 1, Plt. Am. Compl., ¶ 47 (alleging that by following the law, Defendant Century is "exploiting an erroneous ATF regulation which suggests that the 'sporting purposes test' does not apply as long as the completed firearms have ten or less imported parts").)  But, C.F.R. § 178.39 is a legislative rule and, by statute, the regulation has "general applicability and legal effect."  44 U.S.C. § 1510; Guedes v. BATF, 920 F.3d 1, 19 (D.C. Cir. 2019).  In other words, Century's compliance with Section 178.39 establishes that no law has been violated, and the fact that Plaintiffs disagree with the applicable ATF regulation is not a valid basis to contend otherwise.  Given the actual text of the laws and regulations, Century did not violate 18 U.S.C. § 922(r), nor could it have done so "knowingly."

### ii.  Century Did Not Violate 18 U.S.C. § 922(b)(4).

Plaintiffs also contend that Century coordinated with "other Defendants" to "violate § 922(b)(4)'s prohibition on the sale of 'machinegun[s]' to the general public."  (Dkt. No. 1, Compl., ¶¶ 4, 32, 64-71.)  This allegation is implausible and baseless on its face. Section 922(b)(4) of the GCA states, in relevant part, that "it shall be unlawful for any . . . licensed manufacturer . . . to sell or deliver . . . to any person any . . . machinegun (as defined in section 5845 of the Internal Revenue Code of 1986) . . . except as specifically authorized by the Attorney General consistent with public safety and necessity."  18 U.S.C. § 922(b)(4).  A "machinegun" is defined in Section 5845 of the National Firearms Act ("NFA") as

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

machinegun, and any combination of parts from which a machinegun can be
assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

The federal machinegun ban, 18 U.S.C. § 924(c)(1)(B), applies only to fully automatic

weapons – i.e., those that "shoot, [are] designed to shoot, or can be readily restored to shoot,

automatically more than one shot, without manual reloading by a single function of the trigger,"

26 U.S.C. § 5845(b).  On the other hand, a "semi-automatic rifle" is defined as "any repeating

rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case

and chamber the next round, which requires a separate pull of the trigger to fire each cartridge."

18 U.S.C. § 921(a)(28).

Here, the Complaint specifically acknowledges that the Rifle is a "semi-automatic" rifle

and was not converted to fire fully automatic.  (Dkt. No. 1, Compl., ¶ 68 (acknowledging that the

Rifle at issue was "designed to fire in a semi-automatic fashion"); see also United States v. Veng

Xiong, 1 F.4th 848, 856 (10th Cir. 2021) (noting that a WASR-10 is "a semiautomatic

weapon").)   Indeed, the Supreme Court has recognized that commonplace semi-automatic

rifles, such as the AK-style rifle here and the AR-style rifles, are "unless modified, a

semiautomatic weapon" and not a machinegun.  See Staples v. United States, 511 U.S. 600, 603

(1994); Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., 91 F.4th 511, 532-33 (1st

Cir. 2024)  United States v. Bishop, 926 F.3d 621, 624-25 (10th Cir. 2019).  Accordingly,

Defendant Century did not violate 18 U.S.C. § 922(b)(4).

### iii.  Century Did Not Violate California Penal Code §§ 30510, 30515, or 30605(a).

Plaintiffs also argue that Defendant Century violated California's "assault weapons" law,

which bans the possession of certain firearms within the State of California.  (Dkt. No. 1, Plt.

Compl., ¶¶ 4, 32, 54-56, 122; see also Cal. Pen. Code §§ 30510, 30515, 30605(a).)  In this

regard, Plaintiffs allege that the Rifle was prohibited from being sold or possessed in California.[11]  (Id.)  However, as Plaintiffs acknowledge, the Rifle *was not* sold by Century into the State of California.  Rather, the the Rifle was lawfully purchased by the shooter from a federally licensed firearms retailer in the State of Nevada,[12] and then the shooter subsequently transported the firearm into California.  (Id. ¶ 7 (explaining that the shooter purchased the the Rifle "from a Nevada gun dealer on July 9, 2019").)  Thus, since Century did not sell or distribute the Rifle into California, California's firearms laws are inapplicable.  Further, the unilateral and unlawful act of a third-party in bringing the Rifle into California is not a basis to contend that Century violated the law.  Thus, Century did not – as a matter of law – knowingly violate the California Penal Code.

### iv.    Century Did Not Violate Vermont Statute 13 § 4021(a).

Citing Section 4021(a) of the Vermont Statutes, Plaintiffs' also allege that "[o]ne or more of Defendants *may have* violated additional laws in Vermont, including, but not necessarily limited to, Vermont's prohibition on the manufacture, possession, transfer, offering for sale, receiving, or importing large capacity magazines."[13]  (Dkt. No. 1, Plt. Compl., ¶ 6. (emphasis added); see also id. ¶¶ 72-73.)  Aside from there being no facts alleged in support of this claim, the contention is simply a red herring because manufacturers and importers are specifically excluded from this law:  "This section shall not apply to any large capacity ammunition feeding device . . . . manufactured, imported, transferred, or possessed by a manufacturer or importer licensed under 18 U.S.C. chapter 44 . . . for transfer in foreign or domestic commerce for

---

[11] In fact, as Plaintiffs acknowledge, Defendant Century has a different model semi-automatic rifle that was "California Compliant" and sold into California.   (Dkt. No. 1, Plt. Compl., ¶ 114.)

[12] Thus, the shooter would have completed the required forms (4473) and a background (NICS) check prior to acquiring the Rifle.

[13] Vermont defines "large capacity ammunition feeding device" to mean a device that accepts "more than 10 rounds of ammunition for a long gun."  Vt. Stat. Ann. 13 § 4021(e)(1).

delivery and possession outside the State of Vermont." 13 Vt. Stat. Ann. § 4021(d)(1)(E).[14]

Here, as acknowledged by Plaintiffs, Century is a licensed manufacturer, importer, and seller of

firearms. As such, there is no plausible claim that Defendant violated Section 4021(a).

Accordingly, the predicate exception is not applicable in this matter.[15]

## IV.   PLAINTIFFS' ATTEMPT TO IMPOSE CALIFORNIA LAW ON LAWFUL COMMERCE IN OTHER STATES VIOLATES THE TENTH AND FOURTEENTH AMENDMENTS.

Plaintiffs acknowledge that (1) the Rifle was lawfully distributed to, and purchased in,

Nevada but then transported into California by the shooter and (2) while California includes the

Rifle on its list of prohibited firearms, Nevada does not. Despite these facts, Plaintiffs seek to

hold Century civilly liable for alleged violations of California's criminal laws and are pursuing

damages and injunctive relief for lawful commerce that occurred entirely in other states. In other

words, Plaintiffs impermissibly seek the extraterritorial imposition of California's laws and

policies on lawful commerce in other states, which violates the Tenth Amendment. The

Commerce Clause "precludes the application of a state statute to commerce that takes place

wholly outside of the State's border, whether or not the commerce has effects within the State."

Edgar v. MTE Corp., 457 U.S. 624, 642-43 (1982) (plurality opinion); see also BMW N. Am. v.

Gore, 517 U.S. 559, 571-73 (1996) (noting that a state cannot establish a "policy for the entire

Nation . . . or even impose its own policy choice on neighboring states").

The Commerce Clause will be implicated when application of a state law has the

practical effect of directly regulating commerce occurring wholly outside the enacting State's

---

[14] The statute contains exceptions for licensed sellers and dealers as well. Vt. Stat. Ann. 13 § 4021(d)(2).

[15] It is also worth noting that for the predicate exception to be implicated, any purported violation of a statute must not only be done "knowingly" but also be "a proximate cause of the harm for which relief is sought." 15 USC § 7903(5)(A)(iii). Here, there are no well-pleaded material facts that could plausibly establish that Century knowingly violated any statute or that any purported violation of the statutes identified in Plaintiffs' Complaint was a proximate cause of the Plaintiffs' injuries. Specifically, there is no allegation that the Rifle was actually modified to fire fully automatically nor is there an allegation that the Rifle was sold by Century into California.

borders.  Healy v. The Beer Institute, 491 U.S. 324, 329 (1989); Knoll Pharm. Co. v. Sherman, 57 F. Supp. 2d 615, 623 (N.D. Ill. 1999) (holding that the "Commerce Clause invalidates a state law that in practical effect regulates markets outside the state's borders, even if the extraterritorial reach was unintended by the statute").  Importantly, a specific statute or regulation is not necessary for asserting a dormant Commerce Clause claim as "State power may be exercised as much by a jury's [or judge's] application of a state rule of law in a civil lawsuit as by a statute."  Gore, 517 U.S. at 572 n. 17. Additionally, under the Due Process Clause of the Fourteenth Amendment, one state cannot penalize conduct that is lawful in another state.  Gore, 517 U.S. at 573.

Here, the relief Plaintiffs seek through their Complaint would require the Court to enjoin Century from lawfully selling the Rifle in states outside of California and/or would require Century to pay monetary damages based on lawful firearm sales in other states.  In other words, Plaintiffs seek to apply California laws, which reflect policy decisions by the California legislature, to lawful activities that occur in other states.  This is improper and violates the dormant Commerce Clause as well as the Due Process Clause.  As such, Plaintiffs' claims against Century should be dismissed.

## V.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE COMMON LAW.

Although there are ample bases to dismiss the Complaint (statute of limitations, Section 41.131 of the Nevada Revised Statutes, the PLCAA, and Constitutional considerations), it is worth noting that Plaintiffs' claims should also be dismissed under the common law.

### 1.   Plaintiffs' First Cause of Action for Products Liability Should Be Dismissed Because a "No Defect" Theory of Products Liability is Not Actionable.[16]

---

[16] Plaintiffs' no-defect product liability claim is reminiscent of "Turley lawsuits" from the 1980s, which were lawsuits alleging that lawfully sold and purchased handguns served no legitimate purpose and were intended merely to force firearms companies to spend significant funds defending the cases.  These cases were roundly rejected.  See, e.g., Baniewicz, Jill, Is Hamilton v. AccuTek a Good Predictor of What the Future Holds for Gun Manufacturers?, Indiana Law Review, Vol. 34, no. 2 at pp. 423-25 (2001) (explaining that courts have uniformly rejected strict liability,

Although purposrtedly bringing a product liability claim, Plaintiffs do not identify a defect in the Rifle or claim that the Rifle failed to operate as designed.  Instead, Plaintiffs argue that the Rifle "was defective in that the risks that it would be misused in an unlawful act of gun violence like the Attack outweighed any conceivable benefits associated with the design."  (Dkt. No. 1, ¶ 121.)  The failure to allege an actual defect in the design or manufacture of the product is fatal to a product liability claim.  See Farnham v. Bombardier, inc., 640 A.2d 47, 48 (Vt. 1994) (explaining that there must be a defect in the product that caused it to be unreasonably dangerous); Soule v. Gen. Motors Corp., 882 P.2d 298 (Cal. 1994) (explaining that there must be an actual defect in the product); Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 571 (Nev. 1992) (same).[17]  Additionally, the risks from firearms "arise from the function of the product, not any defect in the product," which means there is no basis for a product liability claim.  McCarthy v. Sturm, Ruger & Co., Inc., 916 F. Supp. 366, 371 (S.D.N.Y. 1996), aff'd sub nom., McCarthy v. Olin Corp., 119 F.3d 148 (2d Cir. 1997).  Therefore, Plaintiffs' product liability claim is not legally viable and should be dismissed.

2. **Plaintiffs' Second Cause of Action for Negligence Should Be Dismissed Because There is No Special Relationship.**

In order to impose a duty to control the acts of another, there must be a recognized "special relationship."  Regents of Univ. of Cal. v. Superior Court, 413 P.3d 656, 664 (Cal. 2018); Peck v. Counseling Serv. Of Addison County, Inc., 499 A.2d 422, 425 (Vt. 1985); Mangeris v. Gordon, 580 P.2d 481, 483 (Nev. 1978).  Without a special relationship recognized under the law, one does not owe a duty to control the conduct of another.  Id.  Here, the facts are clear: the shooter legally purchased the Rifle in another state from a non-party licensed seller,

---

ultrahazardous, and risk-benefit analysis as bases to hold firearms manufacturers and sellers civilly liable for non-defective products).

[17] All of the three states implicated reject the idea that there can be a no-defect product liability cause of action.

unlawfully transported the Rifle into California, bypassed security to sneak into the festival, and then intentionally fired into a crowd.  These factual allegations do not establish the existence of a special relationship, which means Defendant Century had no duty as a matter of law.

Moreover, even when a special relationship exists, the existence of a recognized duty depends on many factors, including the degree of certainty that the plaintiff will suffer an injury and closeness of the connection between the defendant's alleged conduct and the injury.  See, e.g., Smith v. Freund, 192 Cal. App. 4th 466, 473 (2011) (parents of a child with mental health issues who shot two people had no duty to control); Jacoves v. Un. Merchandising Corp., 9 Cal. App. 4th 88, 118-19 (1992) (a firearm retailer had no reason to expect buyer to commit suicide). Here, the lawful importing, distribution, and sale of a semiautomatic rifle is an insufficient basis to support a legal duty, which means Plaintiffs fail to state a cognizable claim for negligence.

**3. Plaintiffs' Third Cause of Action for Public Nuisance Should Be Dismissed Because the Lawful Importing and Sale of a Firearm in Other States Cannot Constitute a Public Nuisance in California.**

Plaintiffs assert a public nuisance claim under California law, but based on the earlier choice-of-law analysis, Nevada law should apply, and under Nevada law, there is no private right of action based upon a claim of public nuisance.  Coughlin v. Talihook Ass'n, Inc., 818 F. Supp. 1366, 1371-72 (D. Nev. 1993).  As such, Plaintiffs' third cause of action should be dismissed. Additionally, even if California law were applied, it is well-settled that the manufacture and sale of lawful products cannot be a basis for a public nuisance claim, especially when the defendants lack control over the products at the time of the alleged injury.  See, e.g., Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp., 273 F.3d 536, 538-42 (3d Cir. 2001); State v. Lead Indus. Ass'n, 951 A.2d 428, 456-57 (R.I. 2008); City of Philadelphia v. Beretta U.S.A. Corp., 126 F. Supp. 2d 882, 910-11 (E.D. Pa. 2000), aff'd, 277 F.3d 415 (2002).  Further, this incident relates to one person purposefully misusing a firearm by illegally transporting it and then

criminally using it to harm others.  The facts alleged do not support any basis for a public nuisance claim.

To be clear, Plaintiffs concede that Century lawfully sells WASR-10s in Nevada; that Century does not sell this model in California; and that Century sells a different model into California that does comply with California laws.  Nonetheless, Plaintiffs assert a "public nuisance" claim because lawfully purchased firearms in another state may be transported by third parties into California.  This is not a viable public nuisance claim.

**4.**   **The Shooter's Intentional and Criminal Acts Constitute the Sole Proximate Cause as a Matter of Law.**

Under the law, a superseding cause breaks the chain of causation.  Hardison v. Bushnell, 18 Cal. App. 4th 22, 27 (1993); Van Cleave v. Kietz-Mill Minit Mart, 633 P.2d 1220 (Nev. 1981); Paton v. Sawyer, 370 A.2d 215, 217 Vt. 1976).  Indeed, the intentional criminal acts of a third party will constitute the proximate cause of an injury, superseding any prior negligence.  See Estate of Summer v. Dep't of Social & Rehab. Servs., 649 A.2d 1034, 1036-37 (Vt. 1994) ("[W]e conclude that, as a matter of law, the only immediate and proximate cause of plaintiff's damages was the independent, intentional criminal act of Steven Buelow . . . .").; Koepke v. Loo, 18 Cal. App. 4th 1444, 1449 (1993) ("Criminal conduct which causes injury will ordinarily be deemed *the* proximate cause of an injury, superseding any prior negligence which might otherwise be deemed a contributing cause."); see also Wood v. Safeway, inc., 121 P.3d 1026, 1037 (Nev. 2005) (explaining that the intentional criminal acts were superseding as a matter of law).  The facts alleged in the Complaint establish that the shooter lawfully purchased the Rifle in Nevada but then unilaterally transported it into California, unlawfully entered the festival, and then intentionally utilized the Rifle to shoot attendees at the festival.  Thus, the shooter's multiple criminal and intentional actions are the sole proximate cause of the injuries in this case.

## CONCLUSION

Based on the foregoing arguments and authorities, and in light of the facts alleged in the Complaint, Defendant respectfully requests that its Motion to Dismiss be granted and that Plaintiffs' lawsuit against Defendant Century Arms, Inc. be dismissed with prejudice.[18]

WHEREFORE, based on the foregoing, and upon the legal authorities outlined in the attached Memorandum of Law in Support, Defendant Century Arms, Inc. respectfully requests that this Court enter an Order dismissing Plaintiffs' lawsuit with prejudice and providing whatever and other further relief is deemed necessary and just.

Dated: April 5, 2024

By: /s/ Andrew D. Manitsky
Andrew D. Manitsky, Esq.
LYNN, LYNN, BLACKMAN & MANITSKY, P.C.
76 St. Paul Street, Suite 400
Burlington, Vermont 05401
amanitsky@lynnlawvt.com

PRO HAC VICE ADMISSION TO BE SOUGHT:
Anthony M. Pisciotti
Danny C. Lallis
Ryan L. Erdreich
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
apisciotti@pisciotti.com
dlallis@pisciotti.com
rerdreich@pisciotti.com

**Attorneys for Defendant Century Arms, Inc.**

---

[18] This matter should be dismissed with prejudice in its entirety.  The other named Defendant, Romarm, S.A., has never been served with the Complaint, and the time to do so has elapsed.  (See Dkt. No. 9 (extending the deadline to December 22, 2023.)  This lawsuit was filed after the expiration of the statute of limitations in Nevada and California and on the last day of the statute of limitations in Vermont.  Under Vermont law, in order for the filing of a complaint to toll the running of the statute of limitations, the complaint must also be timely served.  Brooks v. K.S.T., Inc., 2020 WL 5995210, at *3 (D. Vt. Oct. 9, 2020).  Here, by Court Order, Plaintiffs' time to serve the Complaint was extended on three occasions.  However, Plaintiffs never served Romarm, which means that – regardless of which state's statute of limitations is applied – Plaintiffs' claims against Romarm are now untimely.